**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL ACTION FILE NO. |
| v. | : | 3:20-cr-00011-TCB-RGV |
| | : | |
| DANIEL BLAKELY | : | |

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Defendant Daniel Blakely ("Blakely") is charged in a single-count indictment with possession of a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g)(1). [Doc. 1].[1] Blakely has filed a motion to suppress evidence that he contends is the fruit of an illegal traffic stop, [Doc. 16], and after he perfected the motion, see [Doc. 20], the government filed a response in opposition, [Doc. 21], and Blakely filed a reply, [Doc. 22]. An evidentiary hearing on the perfected motion was held on November 2, 2021,[2] see [Doc. 24], following which,

---

[1] The indictment also includes a forfeiture provision. [Doc. 1 at 2-3]. The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[2] See [Doc. 28] for a transcript of the evidentiary hearing held on Blakely's motion to suppress, [Doc. 16], as perfected, [Doc. 20], which will be referred to as "(Tr. at ___)." In addition, at the evidentiary hearing, the government submitted an exhibit, which will be referred to as "(Gov't Ex. 1)," and Blakely submitted several exhibits, which will be referred to as "(Def. Ex. ___)."

the parties filed post-hearing briefs, [Docs. 32 & 34].  For the reasons that follow, it is **RECOMMENDED** that Blakely's perfected motion to suppress the fruit of an illegal traffic stop, [Docs. 16 & 20], be **DENIED**.

## I.  STATEMENT OF FACTS

On December 4, 2019, between 11:00 a.m. and noon, Deputy Dalton Anderson ("Deputy Anderson") of the Coweta County Sheriff's Office was traveling north in a marked patrol vehicle on Interstate 85 ("I-85") between exits 51 and 56 when he observed a white Cadillac ahead of him in traffic.[3]  (Tr. at 5, 7, 15).  Deputy Anderson entered the tag number of the Cadillac into his in-vehicle computer and learned that the registered owner of the vehicle, Blakely, had an outstanding arrest warrant.  (Tr. at 7, 17).  Deputy Anderson, who was traveling at approximately 70 to 75 miles per hour, (Tr. at 15), pulled up beside and then passed the Cadillac "to confirm that . . . the registered owner was operating the vehicle," (Tr. at 7, 15, 18-19), and although the widows of the Cadillac were "lightly tinted," he could "[v]ery clearly" see the driver of the Cadillac by looking down into the vehicle from the vantage point of his patrol vehicle and determined that the driver matched the description of Blakely provided with the arrest warrant,[4]

---

[3] Deputy Anderson was driving a Chevrolet Suburban.  <u>See</u> (Gov't Ex. 1 at 18:24-18:32).

[4] Deputy Anderson testified that the arrest warrant indicated that Blakely was a black male, who was 6'1", weighed 150 pounds, and had brown hair, and that

(Tr. at 7-8, 19-21).  After Deputy Anderson had passed the Cadillac, he activated his body camera and then "drift[ed] back and let the white Cadillac pass [him] so [he] c[ould] get behind [it] and activate [his] lights."  (Tr. at 7, 15, 19-20; Gov't Ex. 1 at 00:01-00:40).  After Deputy Anderson activated his lights and siren, Blakely slowed down, used his turn signal, and moved over to the right shoulder, entering the "gore," i.e., the triangular area where the entrance ramp connects with the interstate highway, at exit 56.  (Tr. at 8, 23-24; Gov't Ex. 1 at 00:41-01:01).  However, instead of coming to a complete stop, Blakely accelerated away from Deputy Anderson, as evidenced by black smoke emitting from the Cadillac's tailpipes, (Tr. at 9, 24; Gov't Ex. 1 at 01:01-01:07), and Deputy Anderson pursued the Cadillac north on I-85, reaching a speed of 110 miles per hour during the pursuit, (Tr. at 9-11; Gov't Ex. 1 at 01:01-03:36).

Blakely exited I-85 at exit 61, striking a raised median as he turned south on Highway 74, which flattened a couple of his tires, and he then made a right turn onto Oakley Industrial Boulevard, where the vehicle came to a stop in the

---

while driving beside the Cadillac, he observed that the driver matched the description of Blakely in the warrant.  (Tr. at 20-21).  Deputy Anderson explained that he was able to determine the gender and race of the driver, and while he could not estimate his exact height, a "[s]ix-foot-one male would be a skinny male if he[] [weighed] 150 pounds," and based on his observation of the driver of the Cadillac, Deputy Anderson believed he met the physical description of Blakely provided in the arrest warrant.  (Id.).

roadway.  (Tr. at 11; Gov't Ex. 1 at 03:45-04:10).  Blakely abandoned the Cadillac and fled on foot, carrying a red plastic bag.  (Tr. at 11; Gov't Ex. 1 at 04:10-4:14). Deputy Anderson continued to pursue Blakely in his patrol vehicle as Blakely ran through a parking lot and onto the premises of the Country Inn & Suites hotel (the "hotel").  (Tr. at 11-12; Gov't Ex. 1 at 04:10-04:40).  Deputy Anderson saw that Blakely was carrying a red plastic bag that appeared to contain something, but Blakely ran behind the hotel, eluding Deputy Anderson, who then exited his patrol vehicle and began searching for Blakely.  (Tr. at 12; Gov't Ex. 1 at 04:30-04:45).  As Deputy Anderson searched the exterior area of the hotel, an individual approached him in the parking lot and reported that Blakely was inside the hotel. (Gov't Ex. 1 at 05:30-05:40).  Deputy Anderson ran to the front entrance of the hotel where he encountered Blakely exiting the lobby, and he ordered Blakely to get on the ground and handcuffed him.  (Id. at 05:40-06:05).  After placing Blakely under arrest, Deputy Anderson searched him and found on his person U.S. currency and a red plastic bag that was consistent with the bag he had previously observed Blakely carrying, but the bag was empty.  (Tr. at 12; Gov't Ex. 1 at 06:10-06:30).

Deputy Anderson and other law enforcement officers searched the hotel premises, and another officer found a Glock firearm inside a cabinet in the breakfast area of the hotel lobby.  (Tr. at 12-13; Gov't Ex. 1 at 06:45-11:05).  Deputy Anderson later reviewed security footage of the hotel and saw that Blakely had

4

placed the firearm in the cabinet located in the lobby breakfast area.  (Tr. at 13).

Deputy Anderson also searched the area behind the hotel and found "a loaded

extended magazine that matched the firearm."  (Id.; Gov't Ex. 1 at 20:38-24:04).

Upon searching the Cadillac that Blakely abandoned in the roadway, Deputy

Anderson found "a large amount of U.S. currency that was vacuumed sealed and

a handgun holster."  (Tr. at 13).

On August 18, 2020, a grand jury in the Northern District of Georgia

returned an indictment, charging Blakely with possession of a firearm following a

felony conviction, in violation of 18 U.S.C. § 922(g)(1), based on the firearm that

was recovered from the hotel lobby after the pursuit and arrest of Blakely on

December 4, 2019.  [Doc. 1].  Blakely has filed a motion to suppress the evidence

seized following his arrest as the fruit of an illegal traffic stop, [Doc. 16], which he

subsequently perfected, [Doc. 20], and the government opposes the motion, [Doc.

21].  Having been fully briefed following an evidentiary hearing, see [Docs. 32 &

34], the perfected motion is ripe for ruling.

## II.  DISCUSSION

Blakely moves to suppress evidence recovered following his arrest on

December 4, 2019, [Doc. 16], including the firearm and extended magazine found

on the hotel premises, contending that Deputy Anderson violated his Fourth

Amendment rights by unlawfully seizing him when conducting the traffic stop on

I-85 without sufficient justification, [id. at 1; Doc. 32 at 6].  Blakely argues that Deputy Anderson "impermissibly decided to stop [his] vehicle," which he contends constituted an unlawful seizure under the Fourth Amendment and "led to a chase and subsequent warrantless seizures [of a firearm and magazine]," which he insists constitute fruit of the poisonous tree since those seizures were all tainted by the allegedly illegal initial stop.  [Doc. 16 at 1].  The government opposes Blakely's perfected motion, arguing that Deputy Anderson did not seize Blakely during the traffic stop on December 4, 2019, because Blakely never stopped his vehicle, and in the alternative, the active arrest warrant justified Deputy Anderson's stop of Blakely, and he has no standing to challenge the seizure of the firearm and magazine from the hotel premises, and in any event, he abandoned those items.  [Doc. 34 at 5-7, 8].  For the reasons that follow, Blakely's motion to suppress, [Doc. 16], as perfected, [Doc. 20], is due to be denied.

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied."  Brendlin v. California, 551 U.S. 249, 254 (2007) (emphasis,

citations, and internal marks omitted); see also Michigan v. Chesternut, 486 U.S. 567, 573 (1988) (citation and internal marks omitted) (noting that an individual's Fourth Amendment right is implicated when he is no longer "free to leave"); Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."); United States v. Mitchell, 407 F. App'x 407, 409 (11th Cir. 2011) (per curiam) (unpublished).  "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all of the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 439 (1991); see also United States v. Hunter, 373 F. App'x 973, 976 (11th Cir. 2010) (per curiam) (unpublished).  The Eleventh Circuit has further explained that a person is "seized" when "a reasonable person would [not] feel free to terminate the encounter" with the police.  Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir. 2006) (citations and internal marks omitted).  However, a show of authority by the police to which the subject does not yield is insufficient. California v. Hodari D., 499 U.S. 621, 625-29 (1991).  Indeed, "[a]bsent the use of physical force, a seizure requires both a show of authority and '*submission* to [that] assertion of authority.'"  United States v. Dolomon, 569 F. App'x 889, 892 (11th Cir.

2014) (per curiam) (unpublished) (second alteration in original) (quoting Hodari

D., 499 U.S. at 626).

Blakely contends that "he was seized at the point when Deputy Anderson activated his lights and sirens," [Doc. 20 at 8], and that he "submitted to [Deputy Anderson's] show of authority when [he] put on his turn signal and tried stopping in the triangular gore area," [Doc. 32 at 6 (citations omitted)].  The government responds that Blakely fled instead of stopping when Deputy Anderson activated his lights and siren, and thus, Deputy Anderson's initial attempt to stop Blakely does not constitute a seizure under the Fourth Amendment.  [Doc. 34 at 5-7].  The Court agrees with the government.

The evidence in this case shows that, in response to Deputy Anderson activating his patrol vehicle's lights and siren, Blakely slowed down, used his turn signal, and pulled the Cadillac into the "triangular gore area," [Doc. 32 at 6 (citations omitted)]; see also (Tr. at 8, 23-24; Gov't Ex. 1 at 00:41-01:01).  However, instead of coming to a complete stop, Blakely accelerated away from Deputy Anderson, leading him on a high-speed chase northbound on I-85 and did not stop until he flattened a couple of tires on his Cadillac upon exiting the interstate at exit 61, where he then turned on Oakley Industrial Boulevard and abandoned the vehicle in the roadway, fleeing the scene on foot, (Tr. at 9, 11, 24; Gov't Ex. 1 at 01:01-04:10), and Blakely was not apprehended until Deputy Anderson

encountered him exiting the hotel lobby, (Tr. at 12; Gov't Ex. 1 at 05:48-06:20), which demonstrates that "[Blakely did not] actually submit to [Deputy Anderson's] show of authority at the traffic [stop]," Dolomon, 569 F. App'x at 893. Rather, "[t]he attempted seizure at the traffic stop was only an attempted seizure," id.; see also Hodari D., 499 U.S. at 626 ("[N]either usage nor common-law tradition makes an *attempted* seizure a seizure."), and "[Blakely] was not actually seized by the police until he was apprehended at the [hotel ] following the car chase," Dolomon, 569 F. App'x at 893 (citation omitted), because "a person is not considered seized while he is engaged in the act of fleeing from the police," United States v. Chappell, 261 F. Supp. 3d 1202, 1205 (M.D. Ala. 2017) (footnote omitted) (finding that "[the defendant] was not seized during the time he was engaged in the act of fleeing from the police"); see also Hodari D., 499 U.S. at 629 (holding that a defendant who was fleeing from law enforcement was not seized until he was fully subdued by law enforcement); United States v. Powell, CRIM. ACT. NO. 3:17cr04-WKW, 2017 WL 3084105, at *3 (M.D. Ala. June 28, 2017) (finding that the defendant was not seized "because he fled as soon as [the police officer] turned on the lights and siren"), adopted by 2017 WL 3083258, at *1 (M.D. Ala. July 19, 2017). Accordingly, Deputy Anderson's initial attempt to stop Blakely did not constitute a seizure under the Fourth Amendment, but rather an attempted seizure, which is "beyond the scope of the Fourth Amendment," Cty. of Sacramento v. Lewis, 523

U.S. 833, 845 n.7 (1998) (citation omitted) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment."), and thus, Blakely's arguments to the contrary are without merit.[5]

However, even if Blakely were correct that Deputy Anderson's actions in attempting to stop him while he was driving on I-85 amounted to a seizure, his motion still would fail because Deputy Anderson had a lawful basis to stop Blakely as he credibly testified that after learning that Blakely, the registered owner of the Cadillac he saw on I-85, had a warrant for his arrest, he observed that the driver of the Cadillac matched the physical description provided with the warrant before he attempted to stop the vehicle.  (Tr. at 7-8, 20-21).  Blakely disputes Deputy Anderson's testimony, arguing that he "could [not] have observed the height, weight, gender and race [o]f the [driver of the] [w]hite Cadillac from [his] location on th[e] sunny December morning [of Blakely's arrest]," and as a result, "[Deputy] Anderson did not have sufficient justification

---

[5] Blakely cites <u>Berkemar v. McCarty</u>, 468 U.S. 420 (1984), and <u>United States v. Gaines</u>, 918 F.3d 793 (10th Cir. 2019), to support his argument that the attempted stop on December 4, 2019, constituted a seizure under the Fourth Amendment. [Doc. 20 at 7-8; Doc. 32 at 6].  However, neither case supports his position because in both cases, unlike here, the defendants actually yielded to the show of authority. <u>See</u> <u>Berkemar</u>, 468 U.S. at 423 (the state trooper forced the respondent to stop and asked him to exit his vehicle, and "[the] respondent complied"); <u>Gaines</u>, 918 F.3d at 799 (defendant was seated in his car at a complete stop and "[o]ne officer gestured for [the defendant] to get out of his car, and he did").

for stopping [Blakely's] vehicle." [Doc. 32 at 6]. The government responds that "th[e] Court should credit Deputy Anderson's testimony" regarding the December 4, 2019, traffic incident since "[Deputy Anderson] could 'very clearly' see the driver [of the Cadillac] as he pulled alongside [the Cadillac]," he was able to estimate the height, weight, race, and gender of the driver, "the driver matched the description in the arrest warrant," and Deputy Anderson "had [no] motivation to lie." [Doc. 34 at 4-5 (alteration and citations omitted)].

Credibility findings are "within the province of the factfinder." United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002)); see also United States v. Gopie, 347 F. App'x 495, 499 (11th Cir. 2009) (per curiam) (unpublished) (citation and internal marks omitted) (recognizing that credibility determinations are within the province of the fact finder "because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses"). "In making its credibility determination[s], the Court must take into consideration not only the interests of the witness[es], but also 'the internal consistency of the [witnesses'] testimony, or [their] candor or demeanor on the stand.'" United States v. Tyler, No. CR 106-075, 2006 WL 2094538, at *7 (S.D. Ga. July 26, 2006) (quoting Ramirez-Chilel, 289 F.3d at 749), adopted at *1. After considering all the testimony, as well as the interests of the witnesses, the Court

finds Deputy Anderson's testimony to be credible and Blakely's arguments to the contrary unavailing.[6]

Deputy Anderson testified that, despite the "light tint" on the Cadillac windows, he was able to confirm that the Cadillac's driver matched the description of Blakely provided with the arrest warrant.  (Tr. at 7-8, 19-21).  In particular, Deputy Anderson testified that the information from the warrant indicated that Blakely was a black male, who was 6'1", weighed 150 pounds, and had brown hair, and that while driving abreast of the Cadillac, he could "[v]ery clearly" see by looking down into the Cadillac from the vantage point of his patrol vehicle that the driver matched that description.  (Id.).  Deputy Anderson

---

[6] Blakely presented testimony by Lashanda Milton ("Milton") at the evidentiary hearing and introduced as exhibits photographs she had taken of Blakely's Cadillac a few weeks before the hearing in an attempt to cast doubt on Deputy Anderson's testimony that he was able to see inside the vehicle on December 4, 2019, given the glare from the sun on the tinted windows.  (Def. Exs. 1-6); see also [Doc. 32 at 5-6].  However, as the government correctly contends, [Doc. 34 at 5], her "unscientific recreations" are unavailing because Deputy Anderson testified that he first observed the Cadillac while driving behind the vehicle on I-85 and then drove beside the Cadillac and passed it before drifting back behind it and activating his lights and siren to stop Blakely.  (Tr. at 5, 7, 15).  Thus, the still photographs offered by Blakely do not contradict Deputy Anderson's testimony because they do not accurately depict what he was able to view from the vantage point of his patrol vehicle while driving beside and passing the Cadillac before drifting back behind it when he attempted to stop the vehicle on December 4, 2019. (Tr. at 15); see also (Gov't Ex. 1 at 00:01-01:07).  Thus, neither Milton's testimony nor the photographs undermine the credible testimony of Deputy Anderson.

explained that he was able to determine the gender and race of the driver, and although he could not estimate the driver's height, a "[s]ix-foot-one male would be a skinny male if he[] [weighed] 150 pounds," and he believed that the driver fit the description provided with the arrest warrant based on his observations while driving beside the Cadillac and after passing it decided to initiate a stop.  (Id.). The Court finds that Deputy Anderson was a credible witness and therefore had a lawful basis to stop the Cadillac as he reasonably believed that the driver matched the description of Blakely provided with the arrest warrant.  See Steagald v. United States, 451 U.S. 204, 213, 214 n.7 (1981) (recognizing that an arrest warrant authorizes the police to seize a person and deprive him of his liberty); United States v. Cortez, 449 U.S. 411, 417 n.2 (1981) ("an officer may stop and question a person if there are reasonable grounds to believe that person is wanted for past criminal conduct."); United States v. Reese, 108 F. Supp. 2d 1338, 1344 (M.D. Ala. 2000) ("Because the officers' suspicion that the defendant was a person for whom they had an outstanding arrest warrant was reasonable, they were justified in stopping him briefly for the limited purpose of verifying his identity.").[7]

---

[7] The government also argues that if Deputy Anderson's attempt to stop Blakely constituted a Fourth Amendment seizure, Deputy Anderson had reasonable suspicion to stop the Cadillac once he learned that the owner of the vehicle had an active arrest warrant based on the Supreme Court's decision in Kansas v. Glover,

Finally, to the extent Blakely challenges the seizure of the firearm and extended magazine from the hotel premises following his arrest, see [Doc. 16 at 1], he has no standing to do so.  The government correctly contends that "Blakely abandoned any standing to seek suppression of the gun and ammunition," because he does not "have a cognizable Fourth Amendment interest" in the hotel since the gun and magazine were both found in the common areas of the hotel and "Blakely was neither an owner nor a guest of the hotel," but instead, "he simply ran in[side the hotel] and deposited the gun in the breakfast area and [] deposited ammunition behind the hotel while fleeing Deputy Anderson."   [Doc. 34 at 8 (citation and internal marks omitted)].

---

--- U.S. ----, 140 S. Ct. 1183 (2020), because he "drew the commonsense inference that [the owner] was likely the driver of the vehicle," which is all that "is needed to initiate a stop."  [Doc. 34 at 7 (alteration in original) (citations and internal marks omitted)].  The government persuasively contends that even if Deputy Anderson was unable to see inside the vehicle due to the tinting on the windows, as Blakely contends, it "would only mean that Deputy Anderson 'lack[ed] information negating an inference that the owner is the driver of the vehicle,' which the Supreme Court held does not undercut the reasonableness of the stop."  [Doc. 21 at 6 (alteration in original) (citation omitted)].   The Court agrees with the government's contention but does not discuss this alternative argument in further detail since it finds that there was no Fourth Amendment seizure of Blakely and, even if the attempted stop amounted to a seizure, Deputy Anderson credibly testified that he was able to view the driver of the Cadillac and determined that he matched the description of Blakely provided with the arrest warrant, justifying the stop, and the motion to suppress is due to be denied on those grounds as discussed in this Report, Recommendation, and Order.

To establish that the government conducted an unconstitutional search under the Fourth Amendment, a defendant must show that "'(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable.'" United States v. Bushay, 859 F. Supp. 2d 1335, 1361 (N.D. Ga. 2012) (quoting United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (per curiam)), adopted at 1354; see also California v. Ciraolo, 476 U.S. 207, 211 (1986) (citation omitted) (explaining that standing to challenge a search under the Fourth Amendment requires a subjective expectation of privacy that society would recognize as legitimate); United States v. Lowry, 315 F. App'x 214, 215 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted); United States v. Baron-Mantilla, 743 F.2d 868, 870 (11th Cir. 1984) (per curiam) (citation omitted).  Thus, "a defendant must establish both a subjective and an objective expectation of privacy,"[8] and he "bears the burden of showing a legitimate expectation of privacy in the area searched."   United States v. Suarez-Blanca,

---

[8] "The subjective prong is a factual inquiry, and requires that a person exhibit an actual expectation of privacy," while the "objective prong is a question of law, and requires that the privacy expectation be one that society is prepared to recognize as reasonable."   Bushay, 859 F. Supp. 2d at 1362 (citations and internal marks omitted); see also United States v. Durdley, 436 F. App'x 966, 968 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted).   "An expectation of privacy is reasonable if it has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."   United States v. Dixon, 901 F.3d 1322, 1338 (11th Cir. 2018) (citation and internal marks omitted).

Criminal Indictment No. 1:07–CR–0023–MHS/AJB, 2008 WL 4200156, at *6 (N.D.

Ga. Apr. 21, 2008) (citations omitted); see also United States v. Sneed, 732 F.2d 886,

888 (11th Cir. 1984) (per curiam) (holding that it is the defendant's burden to

establish a legitimate expectation of privacy); United States v. Jefferson, Criminal

Case No. 1:09–CR–324–WSD–RGV, 2010 WL 3928049, at *4 (N.D. Ga. May 25, 2010)

(citation omitted) ("In other words, [defendant] has the burden to establish that he

has standing to challenge the search or seizure."), adopted by 2010 WL 3927874, at

*9 (N.D. Ga. Oct. 4, 2010), aff'd, 451 F. App'x 833 (11th Cir. 2011) (per curiam)

(unpublished).   A defendant cannot rely on general, conclusory, or vague

assertions to establish standing.  United States v. Cooper, 203 F.3d 1279, 1284 (11th

Cir. 2000) (citation omitted); United States v. Richardson, 764 F.2d 1514, 1527 (11th

Cir. 1985) (citation omitted).

Although Blakely was afforded an opportunity to perfect his motion to

suppress, see [Doc. 17], he has failed to show that he has standing to challenge the

search of the hotel premises where the firearm and magazine were recovered, see

generally [Docs. 16, 20, 22 & 32], and his "failure to demonstrate a reasonable

expectation of privacy in the [hotel premises]," United States v. Bedell, 311 F.

App'x 461, 465 (2d Cir. 2009) (unpublished), "means that he has not met his

baseline burden to show standing to contest the search," United States v. Jenkins,

No. 17-1377, 2018 WL 3559209, at *9 (6th Cir. July 24, 2018) (unpublished) (footnote

and citation omitted), as no evidence demonstrates that Blakely had a legitimate expectation of privacy in the hotel premises, see generally [Doc. 28]; (Gov't Ex. 1), and "the case law is legion that there is no reasonable expectation of privacy in the common areas of . . . hotels," United States v. Boyajian, Case No. CR 09-933-CAS, 2015 WL 9239703, at *3 (C.D. Cal. Dec. 17, 2015) (collecting cases); see also United States v. Roby, 122 F.3d 1120, 1125 (8th Cir. 1997) (holding that a hotel guest's reasonable expectation of privacy did not extend to the hallway outside his room because "the corridor outside [his] room [was] traversed by many people, [and thus] [the defendant's] reasonable expectation of privacy [did] not extend so far"); United States v. Lyons, 706 F.2d 321, 326 (D.C. Cir. 1983) (citations omitted) (noting that "[t]he distinctive attributes of life in a hotel—the facts that the occupants 'share corridors, sidewalks, yards, and trees' and that each room abuts several others—inevitably mute some of each guest's legitimate expectations" and finding that a defendant who was present at a hotel to complete a drug deal was no "ordinary guest" and the subsequent removal and search of his overcoat following the drug deal did not violate his reasonable expectations of privacy).

Blakely also lacks standing to contest the seizure of the firearm and loaded magazine because he voluntarily relinquished any reasonable expectation of privacy by abandoning them as he was fleeing from Deputy Anderson. On this issue, the government maintains that Blakely voluntarily abandoned the firearm

17

in the hotel's breakfast area and the magazine loaded with ammunition for the firearm behind the hotel to avoid legal liability since no one coerced him to deposit either item.  [Doc. 34 at 8].  "One who voluntarily abandons personal property in the Fourth Amendment sense abandons one's reasonable expectation of privacy in that property and cannot challenge the constitutionality of its subsequent search or seizure."  United States v. Anderson, 754 F. Supp. 442, 443 (E.D. Pa. 1990) (citations omitted); see also United States v. Stevenson, 396 F.3d 538, 546 (4th Cir. 2005) (citations omitted); United States v. Tinoco, 304 F.3d 1088, 1117 (11th Cir. 2002) (citations omitted); United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) (per curiam) (citations omitted) ("[A]n individual who abandons or denies ownership of personal property may not contest the constitutionality of its subsequent acquisition by the police."); United States v. Collis, 766 F.2d 219, 222 (6th Cir. 1985) (per curiam) (citations omitted); United States v. Edwards, 644 F.2d 1, 2 (5th Cir. Unit B 1981) (per curiam) (citations omitted)[9]; United States v. Cruz, No. 5:06-CR-95(WDO), 2007 WL 781866, at *5 (M.D. Ga. Mar. 13, 2007). "Abandonment is akin to the issue of standing because a defendant lacks standing to complain of an illegal search or seizure of property which has been abandoned."

---

[9] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

United States v. Quintana-Grijalva, 332 F. App'x 487, 491-92 (10th Cir. 2009) (unpublished) (citation and internal marks omitted); see also Pineda v. Warden, Calhoun State Prison, 802 F.3d 1198, 1204 (11th Cir. 2015) ("[A] person can abandon his possessory interest in a way that eliminates his standing to challenge a search.").

"The abandonment of one's privacy interest is primarily a question of intent and is determined objectively."   Anderson, 754 F. Supp. at 443-44 (citation omitted).   "The intent may be inferred from words spoken, acts done, and the relevant circumstances existing at the time of the alleged abandonment." Id. at 444 (citing United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973)).  In United States v. Sparks, 806 F.3d 1323, 1341 (11th Cir. 2015), overruled on other grounds by United States v. Ross, 963 F.3d 1056 (11th Cir. 2020), the Eleventh Circuit explained that a commonsense approach should be used when evaluating abandonment.  Id. at 1342 (citation omitted).  The Court must "assess objectively whether abandonment has occurred, based primarily on the prior possessor's intent, as discerned from statements, acts, and other facts."  Id. (citation omitted). "Police pursuit or the existence of a police investigation does not of itself render the abandonment involuntary."  Id. (citation omitted); see also United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994) (citation omitted); United States v. Gibbs, CRIMINAL ACTION NO. 1:17-CR-00207-CAP-CMS-1, 2018 WL 6331341, at *4

(N.D. Ga. Dec. 4, 2018) (citation omitted).  And, "an individual who abandons or denies ownership of personal property may not contest the constitutionality of its subsequent acquisition by the police."  Cofield, 272 F.3d at 1306.

Courts have repeatedly held that when an individual leaves an item behind while fleeing from the police, he has abandoned any interest in that item for Fourth Amendment purposes.  See, e.g. Hodari D., 499 U.S. at 629 (internal marks omitted) (holding that the cocaine defendant abandoned while running from law enforcement and not complying with their "show of authority" was not "the fruit of a seizure" and that "his motion to exclude evidence of [that cocaine] was properly denied"); Dolomon, 569 F. App'x at 893 (citations omitted) (finding that a firearm was not suppressible as the fruit of an unconstitutional seizure where defendant "discarded [ it] before he was actually seized, thereby abandoning it"); Tinoco, 304 F.3d at 1117 (finding that defendants effectively abandoned bales of cocaine that they threw overboard while fleeing the Coast Guard and thus they "ha[d] no Fourth Amendment standing to challenge the seizure" of "the contraband"); Chappell, 261 F. Supp. 3d at 1205 ("Similarly, the gun that [the defendant] threw away while fleeing is analogous to the drugs that the defendant in *Hodari* threw away while fleeing from the police; it was not the product of an illegal seizure, for there had been no seizure when he abandoned it.").

Here, the firearm was recovered in a cabinet in the breakfast area of the hotel lobby and the loaded magazine was found behind the hotel where Deputy Anderson apprehended Blakely as he exited the front lobby.  (Tr. at 11-13; Gov't Ex. 1 at 5:49-5:52, 10:48-10:52, 23:59-24:04).  The evidence shows that Blakely discarded the firearm by placing it in a cabinet in the breakfast area of the hotel lobby where he had no ownership interest and was not even a guest, and the extended magazine loaded with ammunition for the firearm was found discarded behind the hotel where Blakely fled on foot from Deputy Anderson.  (Gov't Ex. 1 at 05:48-06:30, 10:48-10:52, 23:59-24:04).  Thus, Blakely abandoned the firearm and magazine when he left them on the hotel premises, where he was not a guest, and possessed no ownership interest in the areas searched, and he lacks standing to contest the subsequent seizure of the firearm and magazine loaded with ammunition.  See Hodari D., 499 U.S. at 629; Chappell, 261 F. Supp. 3d at 1205.

### III.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Blakely's motion to suppress evidence, [Docs. 16], as perfected, [Doc. 20], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED and RECOMMENDED** this 28th day of February, 2022.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE